IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AIMEE SHEMANO-KRUPP,

    Plaintiff,

  v.

MUTUAL OF OMAHA INSURANCE COMPANY, et al.,

    Defendants.

_____/

No. C 05-04693 JSW

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

Now before the Court are the motions for summary judgment or for partial summary judgment filed by Defendants United of Omaha Life Insurance Company ("United") and Mutual of Omaha Insurance Company (collectively "Defendants") and Plaintiff Aimee Shemano-Krupp ("Plaintiff") on the applicable standard of review and regarding substantive coverage issues. Having carefully reviewed the parties' papers and the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS Defendants' motions for summary judgment and DENIES Plaintiff's motions for summary judgment.

**BACKGROUND**

Plaintiff sues for payment of life insurance benefits under an employee benefit plan purportedly covering her father, Richard Shemano ("Mr. Shemano"), a stockbroker for The Shemano Group ("TSG"). The Plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. United issued the subject group Life and Accidental Death and Dismemberment Policy, Policy No. GLUG-32N5, effective May 1, 1998 (the "Policy"). (*See* Declaration of Diane Quinones in Support of Motion ("Quinones Decl."),

¶ 4, Ex. A at 0001-0044.) TSG also purchased separate Disability Coverage from United. (*See* Declaration of David M. Lilienstein in Support of Plaintiff's Motion re Standard of Review, Ex. C.) Mr. Rodger Benard, also a defendant in this action, was the agent representing Defendants in the sale of these policies to TSG. (Quinones Decl., Ex. A at 0039.)

Under the Plan, a $200,000 death benefit is payable in the event of death of an eligible employee who under the age of 65. (*Id.* at 0026.) The Plan has specific eligibility provisions and defines an eligible employee as a "regular, full-time employee; ... actively employed; and ... receiv[ing] compensation for [their] work." (*Id.* at 0018). Active employment is further defined as "working 30 hours or more a week at [one's] regular job; and customary place of employment." (*Id.*) The policy further provides that the insurance coverage will end when the employee does not satisfy "the requirements for hours worked; or any other eligibility condition in the policy." (*Id.* at 0020.) The same provision also states that "upon uninterrupted payment of premium to [the Insurer, the Insured] may be eligible to continue coverage in accord with the following continuation provision." (*Id.*) Subject to the uninterrupted payment of premium, the policy provides for a limited continuation of life insurance coverage for eligible employees who are no longer defined as actively employed due to total disability. In that circumstance, the life coverage automatically continues for twelve months starting from the date the insured first became totally disabled. However, the policy continues, the 12-month period is extended thereafter, without premium payments, subject to certain conditions. (*Id.* at 0021.) Those required conditions are that the disability began while the employee was insured under the policy, the disability began before the employee reached the age of 60, and the employee has completed the 12-month disability elimination period. (*Id.*) For disabled employees who became disabled over the age of 60, the policy permits eligible employees the option of converting to an individual life insurance policy within 31 days of the date their eligibility ends (12-months plus 31 days). (*Id.*)

According to the long-term disability claim form submitted on behalf of Mr. Shemano by his employer, TSG, on April 19, 2002, Mr. Shemano ceased to work due to the increasing ill effects of lung cancer and a brain tumor. (*Id.* at 0081.) Mr. Shemano also provided a

Physician's Statement with his claim which was signed on July 24, 2002 by his doctor and indicated that Mr. Shemano was likely to be permanently disabled and also indicated at the time of his visit in July 9, 2002, the doctor believed that his patient had not worked since April 2002. (*Id.* at 0087-88.) At the time Mr Shemano ceased working he was 61 years old. By letter dated September 19, 2002, United approved Mr. Shemano's total disability claim and began paying benefits. (*Id.* at 0067.)

Although United assessed Mr. Shemano's condition to be severe and likely terminal and did not require regular confirmation of his disability, on August 27, 2003, Mrs. Shemano on her husband's behalf, submitted a Supplementary Report of Disability in which she indicated that her husband had been totally disabled from April or May of 2002 until the date of her report in August 2003. (*Id.* at 0069.) Mrs. Shemano also indicated that Mr. Shemano had been hospitalized from June 26 until July 27, 2003, he was in hospice care and his daily activities were limited to "total bed rest." (*Id.*) Mr. Shemano's physician submitted a supplemental report on August 29, 2003 in which the doctor indicated that Mr. Shemano had been hospitalized and was thereafter admitted to hospice care. (*Id.* at 0070.) Mr. Shemano remained in home hospice care until the date of his death, on December 8, 2003. (*Id.* at 0459.) He was 62 years old. Mr. Shemano received long-term disability benefits from United from July 21, 2002 until the time of his death.

In addition to receiving disability benefits from United, Mr. Shemano applied for and received disability benefits from the Social Security Administration, as well as the California State Disability program. (*Id.* at 0072-74.)

Also during the same time period, TSG submitted premiums on behalf of Mr. Shemano for life insurance coverage which were accepted by United and United's eligibility reports indicated that Mr. Shemano remained an eligible employee under the plan. (Declaration of David M. Lilienstein in Support of Plaintiff's Motion re Coverage, Ex. H at 0320-27.)

On December 31, 2003, Plaintiff submitted a Proof of Death claim form and death certificate. (Quinones Decl., Ex. A at 0457-59.) United responded to TSG on January 5, 2004 and requested information regarding the last day of active work for Mr. Shemano. (*Id.* at 0451.)

3

On January 23, 2004, United spoke with the selling agent, Defendant Benard, who indicated that he believed Mr. Shemano last worked in June 2003. (*Id.* at 00445.) United also spoke with the Chief Operating Officer of TSG, Mike McDonough, who indicated that Mr. Shemano had last worked in April 2002. (*Id.* at 0444-45.) In a subsequent conversation two days later, Mr. McDonough reversed himself and indicated that Mr. Shemano had indeed returned to work approximately two to four months after April 2002 and had been working just enough to cover the premiums for coverage until June 2003. (*Id.* at 0443.) Mr. McDonough also indicated that TSG did not keep any record of the hours Mr. Shemano worked and did not explain how he could have worked only to cover the cost of the premiums which were paid instead by the employer. (*Id.*, Quinones Decl., ¶ 8.) On January 29, 2004, Mr. McDonough faxed a letter to United which indicated that Mr. Shemano had returned to work in June 2002 and ceased working in June 2003, had periodic absences due to his treatment, and received "no monetary compensation during the period between April 2002 and June 2003 because no commissions were earned." (*Id.* at 0442.) There was no contemporaneous documentation indicating the actual days or hours Mr. Shemano had worked during this period. United's consulting physician examined the medical information in Mr. Shemano's claim file and reported there was no documentation indicating that Mr. Shemano could not work during the time period.

Based on the contemporaneous disability claim file records submitted to United by TSG on Mr. Shemano's behalf, by his wife and his physician, as well as submitted to the Social Security Administration and the State of California, United denied Plaintiff benefits by letter dated February 10, 2004. (*Id.* at 0431-32.) The letter explained the applicable policy provisions and noted that the records indicated that Mr. Shemano had last worked in April 2002 and had remained off work due to total disability until his death. It noted that although the employer had advised that Mr. Shemano returned to the office, he did not receive compensation and did not qualify as actively employed during the relevant time period. The letter explained, without reference to specific policy provisions by number, that without remaining actively employed, Mr. Shemano's coverage only continued for a period of 12 months and did not

4

automatically continue as he was over the age of 60 at the time of onset of total disability. The letter further explained that Plaintiff could appeal the decision. (*Id.*)

On February 27, 2004, Mr. McDonough of TSG appealed the decision by United to deny payment of benefits. (*Id.* at 0419.) The letter indicated that Mr. Shemano had returned to work in June 2002 and had worked until December 2003, the month of his death. (*Id.*) The letter stated that he did not receive payment during this period because, as a commissioned sales person, Mr. Shemano only earned enough to cover his employee-paid benefits which were paid on his behalf in lieu of a paycheck. United evaluated the new material and, by internal memorandum, assessed that the new work dates contradicted the information contained in the long-term disability claim records to United as well as the Social Security Administration and the State of California. (*Id.* at 0418.)

On March 26, 2004, United wrote a letter to Plaintiff affirming its decision to deny benefits. (*Id.* at 0413-15.) The denial explained the same reasoning for United's decision, cited a supplemental report from another treating physician and noted the absence of any records from TSG which would document the company's position that Mr. Shemano returned to active employment during the period June 2002 through June 2003. (*Id.*) United also advised Plaintiff that the company would consider any additional information it received within 90 days. (*Id.* at 415.)

On May 17, 2004, United received a call from Mr. Benard in which he stated his belief that Mr. Shemano continued to work through June 2003. (*Id.* at 0393-94.) United continued to maintain the position that it would review the claim if TSG produced contemporaneous documents indicating Mr. Shemano had returned to active employment, such as time cards, records of trade transactions, commission statement, W-2 forms, or the like. (*Id.*) Approximately three months later, United received a letter from Plaintiff's attorney with four letters signed by TSG employees who stated that they had observed Mr. Shemano return to service clients during the disputed time period. (*Id.* at 0384-391.) By letter dated August 26, 2004, United responded to Plaintiff's attorney and advised him that the information received was inadequate to alter the denial decision because United deemed them not credible

5

considering the lack of objective documentation to support the contention of continued employment and compensation. (*Id.* at 0379-381.) The letter further indicated that there was no evidence to explain the contradiction between the recently-submitted letters and the contemporaneous assertions made by Mr. Shemano, his employer and his wife to the insurance company, the State of California and the Social Security Administration as well as his treating physicians that he was not able to work and was therefore qualified to receive disability payments from each of those sources. (*Id.* at 0379.) Again, the letter indicated the decision was a final determination of the appeal, but that United would consider any new information within 30 days. (*Id.* at 0380.)

Approximately one year later, United received another letter from a new attorney for Plaintiff requesting a further appeal of the company's denial of benefits. (*Id.* at 0311-19.) Over a period of two additional months, from August 2005 through October 2005, Plaintiff's attorney and the in-house attorney for United corresponded about the claim. (*Id.* at 0311-319, 0297-302, 0293-95, 0285-88, 0281-84, 0117-121, 0116.) On October 25, 2005, Plaintiff filed the current complaint in San Mateo County Superior Court and Defendants removed to this Court. The parties filed four motions for summary judgment on the standard of review and various substantive issues regarding coverage.

## ANALYSIS

### A.  Summary Judgment Standard.

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.

1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     The Policy is Subject to and Governed by ERISA.**

Plaintiff contends that California substantive law should apply because of the policy provision which reads: "This Policy is issued in and subject to California law." (Exh. A at 0001.) First, the Court finds that the term "subject to" is far narrower a provision than the choice of law provisions found in the cases cited by Plaintiff that have considered such provisions in ERISA plans. *See e.g., Wang Laboratories, Inc. v. Kagan*, 990 F.2d 1126, 1128 (9th Cir. 1993) (choice of law provision stated that the policy was to be "governed by the law of Massachusetts, and all questions pertaining to the validity and construction of such rights and obligations shall be determined in accordance with such law"); *see also Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1136 (11th Cir. 2001) (choice of law provisions stated that "The Plan is to be interpreted in accordance with the laws of the State of Georgia"). Second, the Court finds that the provision which states that the Policy is subject to California law only applies in the context of this ERISA policy where preemptive federal law does not provide explicit guidance. The only Ninth Circuit case cited by the parties regarding the application of a choice law

7

1  provision in the ERISA context is *Wang Laboratories*, in which the court permitted the
2  application of the choice of law provision to govern the determination of the applicable statute
3  of limitations because, the court found, "ERISA does not supply a statute of limitations in this
4  case, it cannot preempt the applicable state law statute of limitations." 990 F.2d at 1128. The
5  Court adopts the reasoning of this case, and finds that the California law provision in this Policy
6  would apply in the absence of federal ERISA law on the same subject.[1] Therefore, the Court
7  finds unavailing Plaintiff's contentions regarding the application of California state law
8  principles where such principles have been explicitly preempted by ERISA statutory or
9  common law. The Court declines to adopt the principles enunciated in *Elfstrom v. New York
10 Life Ins. Co.*, 67 Cal. 2d 503 (1967) (agency principle, preempted by ERISA as set forth in
11 *UnumLife Ins. Co. of American v. Ward*, 526 U.S. 358, 379 (1999)) and *Walker v. Occidental
12 Life Ins. Co.*, 67 Cal. 2d 518, 522-23 (1967) (notification principle, preempted by ERISA as set
13 forth in *Henkin v. Northrop Corp.*, 921 F.2d 864, 869 (9th Cir. 1990) and *Stahl v. Tony's
14 Building Materials Inc.*, 875 F.2d 1404, 1408 (9th Cir. 1989)).

15  Plaintiff asserts four state law causes of action against Defendants for breach of contract,
16 tortious breach of the covenant of good faith and fair dealing, professional negligence, and
17 negligent misrepresentation. The state law claims are fully preempted by application of ERISA
18 to the policy provisions. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (holding
19 that ERISA preempts state law claims and remedies and limits any recovery to the remedies
20 available under ERISA); *see also* 29 U.S.C. §§ 1132(a) and 1144(a).

21  Finally, although saved from ERISA preemption, the Court declines to apply the process
22 of nature doctrine in this context because the doctrine is not applicable in the basic life
23 insurance context. *Anderson v. Continental Casualty Co.*, 258 F. Supp. 2d 1127, 1132 (E.D.
24 Cal. 2003) (holding that process of nature rule is specifically directed toward the insurance
25 industry and substantially affects the risk pooling arrangement and is therefore saved from

---

[1] Similarly, the Eleventh Circuit case cited by Plaintiff, *Buce v. Allianz Life Ins. Co.*, 247 F.3d at 1136, held that only in the absence of ERISA statutory or common law on the issue of concerning the ambiguity of an accidental death benefit provision, and where the application of Georgia law would not subvert the policies of ERISA, the choice of law provision should guide the court's determination of the subject analysis.

8

preemption); *National Life & Accident Ins. Co. v. Edwards*, 119 Cal. App. 3d 326, 334 (1981) (holding that the process of nature rule applies in the context of a double indemnity provision in an accidental death policy where death follows from an accidental injury which occurred while insured was covered although death occurred subsequent to a time limitation specified in the policy). The process of nature rule holds that, within the meaning of policy provision requiring disability within a specified time after an accident, the onset of disability relates back to the time of the accident itself whenever the disability arises directly from the accident within such time as the process of nature consumes in bringing the person affected to a total state of disability. *Schilk v. Benefit Trust Life Ins. Co.*, 273 Cal. App. 2d 302, 307 (1969). If the doctrine were extended to life insurance, the insured would automatically be covered at death if a terminal illness were diagnosed while the insured was covered by the policy. In the context of life insurance, the triggering event is actual death, not the onset of disability from disease. Mr. Shemano's life insurance policy clearly requires that the insured be covered at the time of his death. (Quinones Decl., Ex. A at 0028.) In addition, the fact that there was a viable conversion provision mandates that the process of nature rule does not apply in these circumstances.

**C. Standard of Review in ERISA Matters.**

Absent a discretionary clause, the default standard of review of a claims determination in an ERISA policy is *de novo*. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999). However, where there is a proper grant of discretion, the deferential abuse of discretion standard is triggered. *Id.*

In this case, the policy language unambiguously confers discretionary authority upon United. The grant of authority, included in the Rider effective May 1, 1998, reads in pertinent part:

> By purchasing the policy, the Policyholder granted United of Omaha Life Insurance Company the discretion and the final authority to construe and interpret the policy. This means that United has the authority to decide all questions of eligibility and all questions regarding the amount and payment of any policy benefits within the terms of the policy as interpreted by United. ... United's interpretation of the policy as to the amount of benefits and eligibility shall be binding and conclusive on all persons.

(*See* Quinones Decl., Ex. A at 0006.) The Court finds there is no ambiguity in the language conferring discretion upon United; it clearly assigns discretion and authority to construe and

9

interpret the policy and to decide all questions of eligibility and amount and payment of any policy benefits to United. *See, e.g., Abatie v. Alta Health and Life Ins. Co.*, 458 F. 3d 955, 963-64 (9th Cir. 2006) (holding that there are no "magic" words that conjure up discretion on the part of the plan administrator, but the granting of the power to interpret plan terms and to make final benefits determinations confers discretion on the plan administrator).

Plaintiff argues that such discretionary clauses are invalid under California law and cites this Court's opinion in *Rosten v. Sutter Health Long-Term Disability Plan, et al.*, (N.D. Cal. Case No. C 03-4597 JSW). The Court found, in that matter, that the purported discretionary grant of authority in the disability policy was invalid under California law and adopted the *de novo* standard of review. However, in this matter, there is no indication from the California authorities submitted that the California Department of Insurance Commissioner's findings with regard to disability plans is applicable in the life insurance context.[2] Regardless, this Court finds that the California Department of Insurance actions do not apply retroactively to the policy here at issue. *See, e.g., Firestone v. Acuson Corp. Long Term Disability Plan*, 326 F. Supp. 2d 1040, 1051 (N.D. Cal. 2004) (finding that CDI's notice applies prospectively only).

Second, Plaintiff argues that the purported grant of discretionary authority conflicts with the rest of the policy documents. Plaintiff contends that the Summary Plan Description ("SPD") does not contain any discretionary language. (*See* Quinones Decl., Ex. A at 0013-0044.) Where the plan and the rider directly conflict, the more favorable plan controls. *Bergt v. Retirement Plan for Pilots Employed by Markair, Inc.,* 293 F.3d 1139, 1145 (9th Cir. 2002). However, here, the plan document is silent as to the grant of discretionary authority and the rider specifically states that in "the event of a conflict between this provision and any other provision of the Policy, including the Certificate, this provision shall control." (*See* Quinones Decl., Ex. A at 0006.) Therefore, the Court finds that the discretionary clause controls.

Next, Plaintiff contends that the rider was added after the integrated insurance contract was already accepted by the employer. In *Grosz-Solomon v. Paul Revere Life Ins. Co.*, 237

---

[2] The Court GRANTS Plaintiff's request of judicial notice of its own oral ruling and the California Insurance Commissioner's findings. *See* Fed. R. Evid. 202.

10

1  F.3d 1154, 1161-62 (9th Cir. 2001), the insurer issued a revised benefit summary approximately
2  one year after the policy had issued, which provided a grant of discretionary authority. The
3  Court refused to enforce the new term based on the policy's integration clause which required
4  that the policyholder accept all changes in writing. *Id.* at 1161. Because there was no evidence
5  of acceptance of the late-added discretionary authority term, the court deemed the new
6  provision null and void. *Id.* at 1162. Here, however, the only admissible evidence in the record
7  demonstrates that the rider was included as part of the original policy documents, and not added
8  later without acceptance. (*See* Declaration of David M. Lilienstein in Support of Motion re
9  Standard of Review, ¶16; *contra* Declaration of Kathy Sands, ¶ 3.) Therefore, *Grosz-Solomon*
10 does not apply to void the discretionary authority rider.

11 Plaintiff also argues that the discretionary grant of authority is invalid because it merely
12 bestows authority upon United to administer claims, but not discretion to resolve them.
13 However the explicit language in United's policy has been held to create a valid grant of
14 discretion. *See, e.g., Dinote v. United of Omaha Life Ins.,* 331 F. Supp. 2d 341, 345 (E.D. Pa.
15 2004) (2004); *Bernards v. United of Omaha Life Ins.*, 987 F.2d 486, 488 (8th Cir. 1993). The
16 Court finds the reasoning in those cases persuasive and the grant of discretionary authority in
17 the subject policy to be valid. *See also Lawless v. Northwestern Mutual Life Ins. Co.*, 360 F.
18 Supp. 2d 1046, 1054 (N.D. Cal. 2005) (finding valid grant of discretionary authority where
19 policy did not include specific use of term "discretion" and where terminology was limited to
20 "authority"); *see also Abatie*, 458 F. 3d at 963-64.

21 Plaintiff next contends that the Court should apply the *de novo* standard of review
22 because United committed several procedural violations which, under the circumstances, are
23 sufficient to merit a more rigorous review. Plaintiff contends that United's failure to advise
24 Plaintiff that ERISA governed the plan, its failure to specify governing plan provisions, and the
25 closing of the file prematurely compels a *de novo* review of the record. *See Gatti v. Reliance*
26 *Standard Ins. Co.*, 415 F.3d 978, 984-85 (9th Cir. 2005) (procedural violations of ERISA may
27 be, under certain circumstances, sufficient to compel a *de novo* standard of review where the
28 violation is so flagrant as to alter the substantive relationship between the employer and

employee and cause substantive harm to beneficiary); *see also Abatie*, 458 F.3d at 972 (holding that when an administrator engages in "wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well, we review de novo the administrator's decision to deny benefits."). Here, the Court finds, to the extent there were any procedural violations by United's initial failure to indicate that ERISA governed the subject plans and the failure to identify the specific provisions by number, the Court finds this conduct does not constitute wholesale and flagrant violations of the procedural requirements of ERISA. In addition, the Court finds that United did not actually close the case file and repeatedly corresponded with Plaintiff over nearly a two year period. United requested further information, materials and evidence and, in fact, kept Plaintiff's file open over a course of numerous letters and twenty-two months. The Court finds that Plaintiff was able to address and seek redress on all substantive issues, including bringing suit in this Court. United's alleged procedural violations were neither flagrant nor taken in utter disregard of the underlying purpose of the plan, and are therefore insufficient to compel a *de novo* review of the record.

Lastly, Plaintiff contends that the Court should apply the *de novo* standard of review because of Defendants' apparent and actual conflicts of interest. Plaintiff argues that the system presents a structural conflict because Mr. Shemano was not made aware of his conversion rights prior to his death and was functioning under the assumption that, upon acceptance of his premium payments, United was undertaking the responsibility of providing life insurance to his beneficiaries. Plaintiff cites *Gaines v. The Sargent Fletcher, Inc. Group Life Ins. Plan,* 329 F. Supp. 2d 1198 (C.D. Cal 2004), for the proposition that an insured justifiably relied on acceptance of premiums as an indication of coverage where he had not been asked and did not provide the required evidence of good health. However, in that case, the court found that the language of the insurance policy was ambiguous on its face regarding the prerequisite requirement of filing a particular personal health statement in order to qualify for life insurance coverage and also that the specific eligibility requirement was never disclosed to the insured. *Id.* at 1216, 1220. Plaintiff's assertion that "the system" of accepting premiums as assurance of

coverage is inherently a structural conflict is unsupported by law. Rather, the *Gaines* court, on the specific facts before it, determined that the insured did reasonably rely on both the acceptance of his premiums, his reasonable interpretation of ambiguous policy language and the lack of disclosure of the specific eligibility requirement at issue in denial. *Id.* Here, although the Court is sympathetic to the allegation that Mr. Shemano was unaware of the lapse in coverage, the facts do not support the contention that the language of the subject policy is sufficiently ambiguous to create an inherent conflict in the system of policy administration.[3] The language of the policy clearly indicates that, at his age, Mr. Shemano was only entitled to continued life insurance if he satisfied the conditions and complied with the filing requirements of the conversion provision. There is no dispute that Mr. Shemano possessed the policy itself and that the language unambiguously stated its eligibility requirements. The Court therefore does not find, considering the undisputed facts before it, that a structural conflict in the system of administration of this claim exists.

Plaintiff also argues that there was an apparent conflict of interest because United acted as both the funding source and the administrator of the Plan, thereby evidencing a financial conflict. *See Tremain v. Bell Industries, Inc.*, 196 F.3d 970, 977 (9th Cir. 1999) (when insurer both funds and administers plan, it operates under an apparent conflict of interest). Although an abuse of discretion review is required where, as here, the ERISA plan grants discretion to the plan administrator, such review is "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record. This standard applies to the kind of inherent conflict that exists when a plan administrator both administers the plan and funds it, as well as to other forms of conflict." *Abatie*, 458 F.3d at 967. "The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history." *Id.* at 968. A court may weigh a

---

[3] In addition, Plaintiff's contention that the lack of notice of the policy termination renders such termination ineffective under California law is unsupported because the governing policy is governed by ERISA. *See supra* analysis citing *Walker*, 67 Cal. 2d at 522-23 preempted by ERISA in *Henkin*, 921 F.2d at 869.

13

conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, *Lang v. Long-Term Disability of Sponsor Applied Remote Technology, Inc.*, 125 F.3d 794, 799 (9th Cir. 1997); fails adequately to investigate a claim or ask the plaintiff for necessary evidence, *Booton v. Lockheed Med. Benefit Plan,* 110 F.3d 1461, 1463-64 (9th Cir. 1997); fails to credit a claimant's reliable evidence, *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003); or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record. *Abatie*, 458 F.3d at 968-69. On the record before this Court, there is no evidence of a conflict of interest beyond the apparent conflict which exists when the insurer both funds and administers the plan.

Under *Abatie*, a further question arises when a court must consider how much weight to give a possible conflict of interest under the abuse of discretion standard and whether, in making that determination, the court may consider evidence outside the record. *Id.* at 970. Here, Plaintiff requests discovery to uncover the extent of other possible conflicts. At oral argument, Plaintiff indicated that the discovery she would pursue if given leave would concern the issue of United's acceptance of Mr. Shemano's premiums, issues relating to United's agent, Mr. Benard, and clarification of the circumstances of the delivery of the subject policy. (*See* Reporter's Transcript of August 25, 2006 hearing at 15.) United concedes that it accepted Mr. Shemano's premiums, but contends the acceptance is not legally significant as it does not create estoppel under the circumstances and prevailing law. United also concedes the possible testimony of Mr. Benard regarding his knowledge of Mr. Shemano's work efforts during the disputed period, but again contends that such testimony is legally irrelevant.[4] Lastly, there is sufficient evidence in the record to indicate that the policy provisions at issue here were in fact delivered to the employees at The Shemano Group and further, should delivery be disproved, Plaintiff's sole remedy would be against the employer and not against United directly. Because the Court does not find any conflict of interest and does not agree that the requested discovery

---

[4] Because the Court does not find the subject policy provisions to be ambiguous, the Court declines Plaintiff's request to explore the testimony of agent Mr. Benard on his possible contemporaneous interpretation of the meaning of the disputed policy terms.

14

would demonstrate the existence of such a conflict, the Court declines to exercise its discretion to consider evidence outside the administrative record to decide the nature, extent and effect on the decision-making process of any conflict of interest. *See Abatie*, 458 F.3d at 970. Therefore, Plaintiff's request to take additional discovery is DENIED.

Accordingly, Defendant's motion for summary judgment on the standard of review is GRANTED; Plaintiff's motion on the standard of review is DENIED. The Court shall apply the abuse of discretion standard of review in reviewing Defendant's decision to deny benefits.

**D.     Denial of Coverage Decision Reviewed for Abuse of Discretion.**

Abuse of discretion standard requires minimal showing. *Snow v. Standard Ins. Co.*, 87 F.3d 327, 331 (9th Cir. 1996) (holding that the abuse of discretion standard does not permit the overturning of a decision where there is relevant evidence that reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence). "It is an abuse of discretion for an ERISA plan administrator to make a decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of fact." *Snow*, 87 F.3d at 331. "The mere fact that the plan administrator's decision is directly contrary to some evidence in the record does not show that the decision is clearly erroneous. Rather, review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed. That standard certainly does not permit the overturning of a decision where there is substantial evidence to support the decision, that is, where there is relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Id.* at 331-32 (internal citations omitted).

There is substantial evidence to support the decision to deny Plaintiff benefits under the policy. Because Mr. Shemano was over 60 years of age at the time of the onset of his disability, he was, subject to the unambiguous terms of the policy, entitled to 12 months of continued coverage, at which point the policy was terminated unless he converted to an individual policy. The exception, clearly set out in the policy language, provided that should the insured return to

work as an active full-time employee receiving compensation, the period of disability would start over again. There is substantial contemporaneous evidence in the record indicating that Mr. Shemano was not actively employed after the onset of his total disability, including his own disability claim form, the contemporaneous reports from treating physicians and a supplementary report from his wife submitted on his behalf as well as the representations made before the State and Social Security Administration indicating that, due to his not being able to work, he was qualified for total disability benefits.

Although there is some non-contemporaneous evidence that Mr. Shemano may have come into the office at various times to talk with his clients on the telephone, there is no evidence that he was working full-time at his regular job and receiving compensation. There is, however, substantial evidence which demonstrates that Mr. Shemano was not able to return to work as a full-time employee, doing his regular job for compensation after the onset of his total disability. The abuse of discretion standard does not permit the overturning of a decision where there is relevant evidence that reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence. *See Snow*, 87 F.3d at 331.

Plaintiff has failed to meet her burden of demonstrating that under the Plan provisions, Mr. Shemano was eligible for coverage at the time of his death. *See Parra v. Cigna Group Ins.*, 81 Fed. Appx. 932, 933 (9th Cir. 2003) (summary judgment properly granted where insured failed to demonstrate coverage under the applicable policy provisions). Under the abuse of discretion standard, there is sufficient evidence to sustain United's denial of benefits. Therefore, Defendants' motion for summary judgment on the substantive issues of coverage is GRANTED and Plaintiff's motion for summary judgment on coverage is DENIED.

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment on the standard of review and the substantive issues of coverage are GRANTED. Plaintiff's motions for summary judgment on the standard of review and coverage are DENIED. Judgment shall be

16

entered in favor of Defendants United of Omaha Life Insurance Company and Mutual of Omaha Insurance Company.

Although by this Order, the Court hereby dismisses Defendants Mutual of Omaha Insurance Company and United of Omaha Life Insurance Company as defendants, there remains Plaintiff's claim against agent Rodger Benard as well as Defendants Mutual of Omaha Insurance Company and United of Omaha Life Insurance Company's third-party complaint against The Shemano Group. As a result, the Court shall conduct a case management conference on January 19, 2007 at 1:30 p.m. to address the issues remaining to be resolved in this matter. The parties' joint case management statement shall be filed no later than January 12, 2007.

**IT IS SO ORDERED.**

Dated: November 20, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE